MONACO, J.,
concurring.
While I fully appreciate the scholarly analysis declaimed in the dissent, I am convinced of the correctness of the position set forth in the majority opinion of Judge Sawaya, and I therefore concur in that opinion. I write in concurrence for two reasons.
First, it is clear to me that section 742.14, Florida Statutes (2009), simply does not apply to the fact situation presented to us by this case. That statute, which obviously seeks to protect a “commissioning couple” seeking to use the benefits of the medical advances made in the science associated with fertility, from possible interference with the resultant child or children by a disinterested donor, does not contemplate the factual situation before us.[11] Indeed, as Justice Jackson observed in the Steel Seizure Case a half century ago in a somewhat different context, trying to figure out how the legislature would have reacted to the facts of that case at the time the relevant statute was adopted is “almost as enigmatic as the dreams Joseph was called upon to interpret for Pharaoh.” See Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 634, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring). I agree with the majority that this legislation, which was adopted in 1993, was not designed to resolve the problem of how to treat children born by in vitro fertilization to a same-sex couple.
Put simply, the appellant certainly did not intend to be a “donor,” as referenced in the statute, the appellee certainly did not act as if the appellant was a “donor,” *804 and in my view I do not think that she was, in fact, a donor as that term was used by the legislature. In this respect I believe that the use of the term by the dissent is far too restrictive and does not comport with either contemporary understanding and usage, or the unique facts of this case and the specific relationship between the parties.
All of the testimony in the trial court indicates that the appellant and appellee were in a committed same-sex relationship, and that they both wanted and agreed to conceive a child to be reared jointly by both of them. If there was a contract between them, and I suggest that there was, then the unquestioned intention of the parties was to jointly raise any child that was conceived by this process as parents. Each thereafter played a significant role in the fertilization and birth procedure, and each fully intended to be, and fully acted as, parents to the child in accordance with their agreement. But for the fact that the appellant and appellee are of the same sex, we would probably consider them to be a “commissioning couple” under the statute, and the outcome of this case would be easy. What is ironic is that the appellant, who provided the ovum that resulted in the birth of the child (her probability of parenthood was measured at greater than 99%)[12], and who actually helped in the financial support and upbringing of this child in accordance with her agreement with the birth mother, should be excluded from contact with the child because she is not a “parent.” It seems to me that she is.
If the situation were reversed and the biological mother had run off with the child, would we exclude the birth mother from contact, even though she contributed very little to the genetic makeup of the child? I think that result would be equally as absurd. The fact is the birth mother under the present fact scenario is a parent as well.
All of this is simply to underscore the obvious. We have arrived at a judicial event horizon. We need legislation to guide us in dealing with the cases that will in the future come before the courts of this state as a result of the combination of the societal changes that we have all witnessed in the years since the relevant statutes were adopted and the still evolving science concerned with human fertility. I agree to this extent with how the dissent characterizes the problem facing us: this unexplored legal terrain “begs for legislation.” Our statutes and case law were constructed on the principle that a child is entitled only to one father and one mother. This case demonstrates that we might have to broaden our field of view in this regard. While this may be the first case of its kind in Florida, it will undoubtedly not be the last.[13]
The second reason I write is to highlight the unfortunate absence of an important consideration that should inform our decision in cases such as this. Yes, I know, as did the able trial judge, that the best interests of the child is ordinarily not the test to be applied. Yet, I cannot help but think that it should be. In my view it would be wrong to deprive the child of the benefits — emotional, monetary and supportive — of the relationship to which that *805 child should be entitled with both the appellant and the appellee. Both of the adult women in this case are parents to K.T.-H. in the real sense of the term. I think that we need to find a way to redirect our focus in cases of this kind so that best interests becomes part of the decisional matrix. Surely we have to make room for that factor in the crucible. Exploring the parental rights of one litigant or the other should not be the end of our deliberations. In the final analysis, we still ought to come to grips with what is best for the child. Here, having two parents is better than one.
SAWAYA, J., concurs.

. The statute does protect certain rights of a "father who has executed a preplanned adoption agreement under s. 63.212.” Since at the time this case was considered by the trial court, gay adoption was not recognized in Florida, no solace could have been found in that clause by this couple. It is interesting to contemplate how the case of Florida Department of Children & Families v. Adoption of X.X.G., 45 So.3d 79 (Fla. 3d DCA 2010), might impact this statute.

. See § 742.12(4), Florida Statutes (2009), concerning the probability for determining fatherhood of a child, which states that "[A] statistical probability of paternity of 95 percent or more creates a rebuttable presumption ... that the alleged father is the biological father of the child.”

. Other states have faced the same challenge. See, e.g., K.M. v. E.G., 37 Cal.4th 130, 33 Cal.Rptr.3d 61, 117 P.3d 673 (Cal.2005); In re Adoption of Sebastian, 25 Misc.3d 567, 879 N.Y.S.2d 677 (N.Y.Sur.Ct.2009).